**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 16 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TENIYA G. DAVIS, | No. 20-15236 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-01968-APG-VCF |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Submitted February 09, 2021[**]
San Francisco, California

Before: WARDLAW and BEA, Circuit Judges, and ROSENTHAL,[***] District Judge.

Teniya G. Davis appeals the district court's judgment affirming the

Commissioner of Social Security's denial of her application for disability insurance

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's order upholding the Commissioner's denial of benefits. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). We may set aside the denial of benefits only if it is not supported by substantial evidence or is based on legal error. *Id.*

In finding that Davis was not "disabled" under the Social Security Act, the administrative law judge (ALJ) gave "great weight" to mental health assessments by three psychologists in connection with Davis's application for benefits: Dr. Bonnie Winkleman, Dr. Pamela Hawkins, and Dr. Timothy Schumacher. In May 2015, Dr. Winkleman examined Davis and found that she "could understand, remember, and carry out simple and a few detailed tasks without special supervision." In August 2015, Dr. Hawkins reviewed Davis's medical and non-medical records, which included Dr. Winkleman's report, and found that Davis would be able to sustain "attention, concentration, persistence, and pace for simple and some detailed tasks" and had "sufficient ability[,] understanding[,] and remembering [for] simple and some 3–4 step tasks." Dr. Hawkins also concluded that Davis could perform work as an "addresser." In December 2015, Dr. Schumacher reviewed Davis's updated record and found Dr. Hawkins's assessment "accurate."

The ALJ ultimately found that Davis could "perform light work" involving "simple tasks typical of unskilled occupations" with "no production rate pace work," only occasional interaction with coworkers, and no interaction with the public.  The ALJ then found that, considering Davis's age, education, work experience, and residual functional capacity to do work within the limits that applied, six kinds of jobs existed "in significant numbers in the national economy that [Davis] can perform."  All but one of those jobs require Reasoning Level 2.

The Department of Labor's *Dictionary of Occupational Titles* identifies occupational reasoning levels ranging from one (the simplest) to six (the most complex).  U.S. Dep't Lab., *Dictionary of Occupational Titles*, App'x C, § III (4th ed. 1991).  The two lowest levels are relevant here:

- Reasoning Level 1 requires an employee to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job"; and

- Reasoning Level 2 requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."

*Id.*

Davis argues that the jobs the ALJ identified, which require Reasoning Level 2, are inconsistent with Dr. Hawkins and Dr. Schumacher's opinions that she was limited to "simple and some 3–4 step tasks."[1]  However, substantial evidence in the record supports the ALJ's finding that Davis could perform these identified positions.  *See Shaibi*, 883 F.3d at 1110 n.7.

A finding that Davis had the residual functional capacity to do only one- or two-step tasks would require the ALJ to find her able to perform jobs requiring no more than Reasoning Level 1.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003–04 (9th Cir. 2015) (a residual functional capacity limited to "one- and two-step tasks" conflicted with the "demands" of positions requiring Reasoning Level 2).  But Dr. Schumacher and Dr. Hawkins agreed that Davis was not limited to one- or two-step tasks.  Both doctors found that she could perform "simple work," "some detailed work," and "some 3–4 step tasks."  Dr. Winkleman also concluded that Davis had the residual functional capacity for "simple employment" and could carry out "simple and a few detailed tasks without special supervision."  Simple work is consistent with positions requiring Reasoning Level 2.  *See Zavalin v. Colvin*, 778 F.3d 842, 846–47 (9th Cir. 2015) (holding that a residual functional capacity limited to "simple, routine, or repetitive work" does not conflict with the

---

[1] Both parties seem to agree that Davis's residual functional capacity is inconsistent with jobs requiring Reasoning Level 3.  ALJ identified mail clerk, which requires Reasoning Level 3, as a potential job for Davis.  This finding was erroneous.  But because the ALJ identified five other positions requiring Reasoning Level 2, this error was harmless.  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017).

4

ability to perform Reasoning Level 2 positions).  Indeed, Dr. Schumacher and Dr. Hawkins both determined that Davis could perform work as an "addresser," which requires Reasoning Level 2.

Davis argues that the ALJ did not properly consider Dr. Winkleman's opinions about Davis's "poor" judgment and mild to moderate difficulty in responding to work pressure and interacting with others.  However, the ALJ incorporated Dr. Winkleman's opinion into his findings on Davis's residual functional capacity.  The ALJ limited Davis to "light work" involving "simple tasks" that have "no production rate pace work," only occasional interaction with coworkers, and no interaction with the public.  In doing so, the ALJ properly credited Dr. Winkleman's opinions and applied them to the residual functional capacity finding.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

The record confirms the district court's conclusion that substantial evidence supports the ALJ's decision and that the ALJ correctly applied the law.

**AFFIRMED**

5